FILED
United States Court of Appeals
Tenth Circuit

March 22, 2011

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

CONCEPCION PADILLA-CALDERA,

Petitioner,

v.

ERIC H. HOLDER, JR., United States
Attorney General,

Respondent.

No. 10-9520

---

**ORDER**

---

Before **KELLY** and **BALDOCK**, Circuit Judges, and **BRORBY**, Senior
Circuit Judge.

---

This matter comes before the court sua sponte to correct a clerical error in

the opinion issued in this appeal on March 14, 2011. The citation to *Escobar v.*

*Holder*, 567 F.3d 466, 478 (9th Cir. 2009), on p. 26 of the slip opinion is removed

and is replaced by a citation to *Mercado-Zazueta v. Holder*, 580 F.3d 1102,

1112-13 (9th Cir. 2009).

Accordingly, the opinion issued on March 14, 2011, is withdrawn, and the

attached amended opinion is issued nunc pro tunc March 14, 2011.

Entered for the Court,

ELISABETH A. SHUMAKER, Clerk

FILED
**United States Court of Appeals**
**Tenth Circuit**

**March 14, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CONCEPCION PADILLA-CALDERA,

        Petitioner,

v.

ERIC H. HOLDER, JR., United States
Attorney General,

        Respondent.

No. 10-9520

---

**PETITION FOR REVIEW OF AN ORDER**
**OF THE BOARD OF IMMIGRATION APPEALS**

---

Submitted on the briefs:[*]

Lane McFee, Denver, Colorado, for Petitioner.

Ernesto H. Molina, Jr., Assistant Director, and Andrew N. O'Malley, Trial
Attorney, Office of Immigration Litigation, Civil Division, Department of Justice,
Washington, D.C., for Respondent.

---

Before **KELLY** and **BALDOCK**, Circuit Judges, and **BRORBY**, Senior
Circuit Judge.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument.

**KELLY**, Circuit Judge.

Concepcion Padilla-Caldera petitions for review of the Board of Immigration Appeals' (BIA) decision denying his request to adjust his status to that of lawful permanent resident and ordering him removed. This is the second time this case has come before us. On a previous petition for review, we held that the BIA erred in concluding that petitioner was statutorily ineligible for an adjustment of status, and we remanded for further proceedings. On remand, the immigration judge (IJ) granted petitioner an adjustment of status, but the BIA reversed, relying on an intervening published BIA opinion. We conclude that the intervening BIA opinion is entitled to *Chevron*[1] deference and that the BIA did not err in relying on it to deny petitioner relief.

Procedural History

Petitioner first entered the United States from Mexico in April 1996 without inspection. He married a U.S. citizen in 1999, who filed an alien relative petition on his behalf in 2000. In May 2000, after the petition was approved, petitioner and his wife left the country so he could return to Mexico to apply for

_____

[1] *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

an immigrant visa.[2]  The U.S. Consulate in Mexico determined that petitioner was not eligible for a visa, however, because he was inadmissable on two grounds. Petitioner's wife then returned to the United States to apply for a waiver of petitioner's inadmissability.  Before she could do so, she fell ill.  She contacted petitioner and asked him to return to the United States to help her.  Petitioner then reentered the country without inspection, which triggered 8 U.S.C. § 1182(a)(9)(C)(i)(I), making him permanently inadmissable because he was in the United States illegally for more than one year and then left and reentered without being admitted.[3]  Shortly after he reentered the country, petitioner was picked up by immigration authorities and placed in removal proceedings.

At the hearing before the IJ, petitioner admitted that he was removable, but sought to adjust his status under 8 U.S.C. § 1255(i).  That subsection gives the Attorney General discretion to adjust the status of certain aliens who are in the country illegally provided they are eligible to receive an immigrant visa and are "admissible to the United States for permanent residence."  *Id.* § 1255(i)(2)(A). The IJ concluded that petitioner was statutorily ineligible for an adjustment of status under § 1255(i) because he was not admissible to the United States for

---

[2]     At the time petitioner married and his wife filed an alien relative petition on his behalf, an alien seeking an immigrant visa and adjustment of status had to apply from outside the United States, at a U.S. consulate.

[3]     There is an exception to permanent inadmissibility under this subsection, but it requires, among other things, that the alien remain outside the country for more than ten years before seeking readmission, *see* 8 U.S.C. § 1182(a)(9)(C)(ii).

permanent residence due to § 1182(a)(9)(C)(i)(I). The IJ therefore denied petitioner's application for adjustment of status and ordered him removed to Mexico. The BIA summarily affirmed the IJ's decision on appeal, and petitioner sought review in this court.

In a June 2006 opinion,[4] this court reversed the BIA and remanded for further proceedings. *See Padilla-Caldera v. Gonzales*, 453 F.3d 1237 (10th Cir. 2006). We held that § 1255(i) and § 1182(a)(9)(C)(i)(I) were contradictory and that we could not follow the dictates of both statutory provisions. *Padilla-Caldera*, 453 F.3d at 1239. In resolving the conflict, we did not have the benefit of any BIA precedent addressing the interplay between the two statutory provisions. The only agency pronouncements on the issue were a general counsel memorandum and a conflicting internal guidance memorandum, to which we did "not owe rigorous deference." *Id.* at 1244. We therefore had to determine for ourselves how Congress intended the two provisions to work together. Because the statutory text itself did not indicate which provision was to control, we looked to familiar canons of statutory construction and the policies underlying the statute to resolve the conflict. *Id.* at 1241. We ultimately concluded that Congress intended the remedial powers of § 1255(i) to control over § 1182(a)(9)(C)(i)(I), so

---

[4]     This court first issued an opinion in this case in October 2005. *See Padilla-Caldera v. Gonzales*, 426 F.3d 1294 (10th Cir. 2005). The government filed a petition for rehearing in January 2006. This court denied the rehearing petition, but issued a modified opinion in June 2006. *Padilla-Caldera v. Gonzales*, 453 F.3d 1237 (10th Cir. 2006).

inadmissibility under § 1182(a)(9)(C)(i)(I) would not preclude eligibility for an adjustment of status under § 1255(i). *Padilla-Caldera*, 453 F.3d at 1244. We therefore reversed the BIA's decision and remanded for further proceedings.

While proceedings were pending before the IJ on remand, the BIA issued a published opinion in an unrelated case arising in the Fifth Circuit that addressed the interplay between § 1182(a)(9)(C)(i)(I) and § 1255(i) for the first time. *See In re Briones*, 24 I.&N. Dec. 355 (BIA 2007). The BIA concluded in *Briones* that an alien who is inadmissible under § 1182(a)(9)(C)(i)(I) cannot qualify for an adjustment of status under § 1255(i) absent a waiver of inadmissibility (which is not at issue here). *Briones*, 24 I.&N. Dec. at 371.

The government argued to the IJ in petitioner's case that he should follow the BIA's decision in *Briones*, rather than our decision in *Padilla-Caldera*, because *Briones* constituted intervening controlling authority that justified departing from the law of the case and the mandate rule. In his April 2008 decision, the IJ "agree[d] that the <u>Briones</u> decision is a correct explanation of the law with reference to the interplay between [§ 1255(i)] . . . and [§ 1182(a)(9)(C)(i)]. The <u>Briones</u> case is, in this Court's opinion, a very clear and cogent explanation of the law in this area." Admin. R. at 95-96. Nonetheless, the IJ felt "constrained" to apply this court's decision in *Padilla-Caldera*, even though he thought the *Briones* decision was "more persuasive." *Id.* at 96. The IJ therefore held that petitioner was eligible for an

-5-

adjustment of status under § 1255(i) and, after considering the relevant facts and law, concluded that petitioner merited a favorable exercise of discretion. *Id.* at 96-98. The IJ therefore granted petitioner's application for adjustment of status under § 1255(i). *Id.* at 98.

The government appealed the IJ's decision to the BIA, which reversed. The BIA first noted that this court had not yet considered whether *Briones* should be given *Chevron* deference. The BIA noted that this court had, however, accorded *Chevron* deference to the BIA's opinion in *In re Lemus-Losa*, 24 I.&N. Dec. 373 (BIA 2007), issued the same day as *Briones*, which employed "an analysis that runs parallel to that in *Briones*," Admin. R. at 4 (citing *Herrera-Castillo v. Holder*, 573 F.3d 1004, 1007 (10th Cir. 2009) (concluding that "§§ 1255(i) and 1182(a) are ambiguous and that the BIA's construction of them in *Lemus-Losa* was reasonable"), *cert. denied*, 130 S. Ct. 3505 (2010)). The BIA further noted that, in *Herrera-Castillo*, this court "observed that although the analysis in *Padilla-Caldera* is at odds with our holdings in *Lemus-Losa* and *Briones*, the Tenth Circuit did not have the benefit of *Briones* when *Padilla-Caldera* was issued." *Id.* (citing *Herrera-Castillo*, 573 F.3d at 1009). The BIA held that this court's opinion in *Herrera-Castillo* "explicitly recognized that *Briones* formed our initial precedential guidance on this particular issue." *Id.*

The BIA therefore concluded that *Briones* constituted intervening controlling authority that justified departing from the law of the case and this

-6-

court's mandate. Following its holding in *Briones*, the BIA further concluded that petitioner was ineligible for adjustment of status under § 1255(i) based on his inadmissibility under § 1182(a)(9)(C)(i)(I). It therefore vacated the IJ's grant of adjustment of status and ordered petitioner removed. Petitioner seeks review of the BIA's decision.

## Jurisdiction

Before reaching the merits of the petition for review, we must satisfy ourselves that we have jurisdiction to review. We have jurisdiction to review the petition only if there has been a final order of removal. 8 U.S.C. § 1252(a). In the order under review, the BIA reversed the IJ's grant of an adjustment of status and ordered petitioner removed. Relying on Ninth Circuit authority, petitioner argues that the BIA did not have jurisdiction to order him removed, and that it should have remanded the action to the IJ to enter an order of removal.

Petitioner is correct that the BIA does not have jurisdiction to determine removability in the first instance; that decision lies exclusively with the IJ. *Sosa-Valenzuela v. Gonzales*, 483 F.3d 1140, 1145-46 (10th Cir. 2007). But we held in *Sosa-Valenzuela* that "[i]f the IJ makes a finding of removability, that finding satisfies [the statutory] definition of an order of deportation. In those circumstances, the BIA can order removal if it reverses the IJ's determination of waiver." *Id.* at 1146. In so holding, we expressly rejected Ninth Circuit authority

-7-

holding that if the IJ finds the alien is removable and then grants discretionary relief from removal, the BIA must remand the matter to the IJ to enter a formal order of removal if it reverses the IJ's grant of discretionary relief. *Id*. at 1146 n.10.

Here, petitioner conceded he was removable at the outset of the administrative proceedings, and the IJ ordered petitioner removed. The BIA affirmed that decision, and we did not disturb the IJ's finding of removability on appeal; we considered only whether petitioner was statutorily eligible for discretionary relief from removal. In his decision on remand, the IJ explicitly referred to his previous order of removal before determining that petitioner should be granted an adjustment of status.

We conclude that the IJ's original determination that petitioner was removable remained undisturbed throughout the proceedings. When the BIA reversed the IJ's grant of an adjustment of status on appeal, it effectively affirmed the IJ's original determination that petitioner was removable. *See id.* at 1146. Thus, the BIA's decision constituted a final order of removal, which we have jurisdiction to review.

### Law of the Case and the Mandate Rule

Petitioner contends that the BIA committed reversible error when it failed to follow the law of the case established in *Padilla-Caldera* and our mandate. We

review de novo the BIA's compliance with our mandate, "including whether the law-of-the-case doctrine or mandate rule forecloses any of the [BIA's] actions on remand." *Gene & Gene, L.L.C. v. BioPay L.L.C.*, 624 F.3d 698, 702 (5th Cir. 2010).

Under the law of the case doctrine, when a court decides an issue of law, that decision should govern all subsequent stages of the litigation. *See Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 823 (10th Cir. 2007). The rule is "flexible," however, and its underlying policy "is one of efficiency, not restraint of judicial power." *Id.* (citation omitted). "[I]t is a rule to be applied at the sound discretion of the court to effectuate the proper administration of justice." *United States v. Gama-Bastidas*, 222 F.3d 779, 785 (10th Cir. 2000). We have recognized three circumstances in which we will depart from the law of the case, one of which is "when controlling authority has subsequently made a contradictory decision of the law applicable to [the] issues." *Dobbs v. Anthem Blue Cross & Blue Shield*, 600 F.3d 1275, 1281 (10th Cir. 2010) (internal quotation marks omitted).

The mandate rule, in turn, "generally requires trial court conformity with the articulated appellate remand." *United States v. Moore*, 83 F.3d 1231, 1234 (10th Cir. 1996). Like the law of the case, it is "a discretion-guiding rule subject to exception in the interests of justice"; it is "a rule of policy and practice, not a jurisdictional limitation, which thus allows some flexibility in exceptional

circumstances." *Id.* at 1234-35. One such exceptional circumstance is "a dramatic change in controlling legal authority." *Id.* at 1234.

Although the law of the case doctrine and the mandate rule most typically concern higher and lower courts, they may also apply to courts and administrative agencies. Thus, when a court reviews the decision of an administrative agency, the doctrines generally "require[ ] the administrative agency, on remand from a court, to conform its further proceedings in the case to the principles set forth in the judicial decision, unless there is a compelling reason to depart." *Grigsby v. Barnhart*, 294 F.3d 1215, 1218 (10th Cir. 2002) (alteration in original) (internal quotation marks omitted).

The government argues that the BIA's decision in *Briones* constituted a change in controlling authority that provided a compelling reason for the BIA to depart from the law of the case and our mandate in *Padilla-Caldera*. Petitioner argues otherwise. First, he contends that *Briones* did not embody a dramatic change in the controlling authority, because it was merely one in a line of published BIA cases that followed a similar rationale. He argues that beginning with *In re Torres-Garcia*, 23 I.&N. Dec. 866 (BIA 2006), continuing through *In re Rodarte-Roman*, 23 I.&N. Dec. 905 (BIA 2006), and concluding with *Lemus-Losa* and *Briones*, the BIA followed the rationale that Congress intended to target recidivists for less favorable treatment under the Immigration and Nationality Act (INA) and therefore an alien inadmissible under any provision of

§ 1182(a)(9) could not be eligible for an adjustment of status under § 1255(i).

Petitioner contends that this court considered and rejected this rationale when it held that petitioner's inadmissibility under § 1182(a)(9)(C)(i)(I) did not make him statutorily ineligible for an adjustment of status under § 1255(i).

The facts, however, do not support petitioner's argument. None of these cases was decided before we issued our original decision in October 2005, *see Padilla-Caldera v. Gonzales*, 426 F.3d 1294 (10th Cir. 2005), and *Torres-Garcia* and *Rodarte-Roman* were decided only shortly before we issued our modified decision in June 2006, *see Padilla-Caldera*, 453 F.3d 1237. Still, petitioner contends that we were aware of the BIA's decision in *Torres-Garcia* because the government filed a Rule 28j letter citing *Torres-Garcia* as supplemental authority for its petition for rehearing. This court may have been aware of *Torres-Garcia* when we issued our modified opinion, but we did not mention *Torres-Garcia* in our decision, much less reject its reasoning. Moreover, the BIA expressly stated in *Torres-Garcia* that the issue of whether an alien who is inadmissible under § 1182(a)(9)(C)(i)(I) can obtain an adjustment of status under § 1255(i) was not before it. 23 I.&N. Dec. at 870 n.4. While noting that the issue was an important one which had led to some disagreement among the courts, the BIA said it had "no occasion to address" the issue because it was neither raised nor briefed by the parties. *Id.*

Petitioner does not suggest that either party drew this court's attention to the decision in *Rodarte-Roman* before we issued our opinion; he argues only that *Rodarte-Roman* follows a rationale similar to *Briones*. At issue in *Rodarte-Roman* was whether the alien, who had been present in the United States unlawfully for two months before he left and who then reentered illegally and remained in the United States thereafter, was inadmissible under § 1182(a)(9)(B)(i)(II). 23 I.&N. Dec. at 906. Subsection 1182(a)(9)(B)(i)(II) provides that an alien who has been in the United States illegally for one year or more and who again seeks admission within ten years of the last time he left the United States is inadmissible. The BIA concluded that § 1182(a)(9)(B)(i)(II) did not apply because the alien accrued his year of unlawful presence in the United States only *after* his departure. *Rodarte-Roman*, 23 I.&N. Dec. at 908-09. In so holding, the BIA did note that all the grounds of inadmissibility under § 1182(a)(9) are aimed at "compound[ing] the adverse consequences of immigration violations by making it more difficult for individuals who have left the United States after committing such violations to be lawfully readmitted thereafter." *Id.* at 909. But it did so only to explain why an alien must have committed an immigration violation *before* he leaves the United States to trigger inadmissibility under any of § 1182(a)(9)'s provisions. *Id.*

Again, this court did not mention *Rodarte-Roman* in its modified decision, nor discuss the BIA's reasoning. Accordingly, we reject petitioner's argument

-12-

that the BIA's decision in *Briones* did not constitute a sufficient departure from the controlling law to justify a departure from the law of the case.

Petitioner also argues that the BIA erred in departing from the law of the case in *Padilla-Caldera* because the BIA is bound by *Padilla-Caldera* until it is overruled by either the Supreme Court or this court sitting en banc. Petitioner's argument overlooks the teachings of the Supreme Court in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), and *National Cable & Telecommunications Ass'n v. Brand X Internet Services*, 545 U.S. 967 (2005), which require this court to give deference to the BIA's interpretation of ambiguous provisions of the INA so long as that interpretation is reasonable. And whether the BIA's decision is entitled to *Chevron* deference does not depend on the order in which this court's and the BIA's interpretations occurred. *See Brand X*, 545 U.S. at 983.

### *Chevron* Deference to *Briones*

When an agency has not provided an interpretation of a statute that it administers, a court may "impose its own construction on the statute." *Chevron,* 467 U.S. at 843. But when the agency has spoken, the court may have to defer to the agency's interpretation. If the intent of Congress is clear, the court need not defer. "The judiciary is the final authority on issues of statutory construction and

must reject administrative constructions which are contrary to clear congressional intent." *Chevron*, 467 U.S. at 843 n.9.

But "if the statute is silent or ambiguous with respect to the specific issue," then the court must determine "whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843. "The court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." *Id.* n.11. But the court "may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Id.* at 844. Thus, "if the implementing agency's construction is reasonable, *Chevron* requires a federal court to accept the agency's construction of the statute, even if the agency's reading differs from what the court believes is the best statutory interpretation." *Brand X*, 545 U.S. at 980.

When we issued our decision in *Padilla-Caldera*, the BIA had not yet spoken authoritatively on the interplay between § 1255(i) and § 1182(a)(9)(C)(i)(I), so we properly "impose[d] [our] own construction on the statute," *Chevron*, 467 U.S. at 843. Now that the BIA has issued its precedential decision[5] in *Briones* setting forth its interpretation of the statute, however, we must determine whether it is entitled to *Chevron* deference.

---

[5]     *See* 8 C.F.R. § 1003.1(g).

There are two steps to this inquiry. First we must determine "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43. If the statute is either ambiguous or silent, we must then determine "whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843. We have already held that the relevant statutory provisions are in conflict and that the "the text itself gives no indication of which provision Congress intended to supercede the other." *Padilla-Caldera*, 453 F.3d at 1241; *see also Herrera-Castillo*, 573 F.3d at 1007 (concluding that "§§ 1255(i) and 1182(a) are ambiguous"). Because the intent of Congress is not clear, we must defer to the BIA's interpretation of the statutory provisions so long as it is a reasonable one.[6]

Subsection 1255(i) permits the Attorney General to adjust the status of certain aliens who are unlawfully present in the United States. Paragraph (1) provides in pertinent part that

> an alien physically present in the United States who entered the United States without inspection[,] who is the beneficiary . . . of a petition for classification under [8 U.S.C. § 1154 (providing, among other things, for alien relative petitions) ] that was filed with the

---

[6]    "[J]udicial deference to the Executive Branch is especially appropriate in the immigration context where officials exercise especially sensitive political functions that implicate questions of foreign relations." *INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999) (internal quotation marks omitted).

-15-

Attorney General on or before April 30, 2001[,] . . . and who, in the case of a beneficiary of a petition for classification . . . that was filed after January 14, 1998, is physically present in the United States on December 21, 2000[,] may apply to the Attorney General for the adjustment of his or her status to that of an alien lawfully admitted for permanent residence.

8 U.S.C. § 1255(i)(1). Paragraph (2), however, limits the Attorney General's discretion, by providing that the Attorney General may adjust an alien's status only if, among other things, the alien "is admissible to the United States for permanent residence." *Id.* § 1255(i)(2).

As the BIA explained in *Briones*, 24 I.&N. Dec. at 359-60, Congress enacted § 1255(i) in 1994 to alleviate the burdens flowing from the INA's requirement that an alien seeking to adjust his status be inspected and admitted or paroled into the United States, which in turn required an alien to apply for an adjustment of status from outside the United States. Under the Immigration Reform and Control Act of 1986, 2.5 million aliens became legalized, which allowed them to apply for immigrant visas for their close relatives. These family members had to leave the United States and apply for an adjustment of status at a U.S. Consulate in their native country. This not only burdened the aliens' families, but the influx of petitions at U.S. Consulates burdened the government as well. In response, Congress enacted § 1255(i) to permit the Attorney General

to grant an adjustment of status to certain aliens who were in the United States

illegally, upon payment of a surcharge.[7]  *See Briones*, 24 I.&N. Dec. at 359-60.

The BIA acknowledged in *Briones* that the plain language of § 1255(i)

contains a contradiction because it permits the Attorney General to adjust the

---

[7]     As originally enacted, § 1255(i) permitted aliens to apply for an adjustment of status from within the United States between October 1, 1994, and October 1, 1997, at which time its provisions would sunset.  *See* Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1995, tit. V, Pub. L. No. 103-317, § 506, 108 Stat. 1724, 1765-66 (enacted Aug. 26, 1994).  In 1997, Congress repealed the sunset provision.  *See* Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1998, tit. I, Pub. L. No. 105-119, § 111, 111 Stat. 2440, 2458 (enacted Nov. 26, 1997).  But Congress also added a provision requiring that the application for adjustment of status be based on an approved alien relative petition that was filed before January 14, 1998.  *Id.*  This was the version of the statute in effect when petitioner's wife filed the alien relative petition on petitioner's behalf in early 2000.  Because the alien relative petition was not filed before January 14, 1998, petitioner was not able to apply for an adjustment of status from within the United States under § 1255(i) at that time.

On December 21, 2000, Congress enacted the Legal Immigration Family Equity (LIFE) Act, tit. XI, Pub. L. No. 106-553, §§ 1101-02, 114 Stat. 2762, 2762A-142 to 2762A-144 (2000), and the LIFE Act Amendments of 2000, tit. XV, Pub. L. No. 106-554, §§ 1501-06, 114 Stat. 2763, 2763A-324 to 2763A-328.  The LIFE Act Amendments extended the date for qualifying alien relative petitions to April 30, 2001, but added a requirement that if the alien relative petition was filed after January 14, 1998, then the alien had to have been present in the United States on December 21, 2000, the date of enactment. 114 Stat. at 2763A-324.  The BIA explained in *Briones*, 24 I.&N. Dec. at 369, that the requirement for physical presence in the United States on December 21, 2000, was intended to discourage new aliens from entering the country illegally in order to take advantage of the reopened window for adjustment of status.  This was the version of the statute in effect when petitioner sought to adjust his status during his removal proceedings.  Petitioner was able to apply for an adjustment of status under § 1255(i) at that time because he was physically present in the United States on December 21, 2000, and his wife filed the alien relative petition on his behalf before April 30, 2001.

-17-

status of an alien who entered the United States without inspection so long as the alien is admissible, but the alien's very entry without inspection makes him inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i). The BIA explained that this contradiction did not exist when § 1255(i) was first enacted, because at that time, an alien who entered the United States without inspection was deportable, but he was not inadmissible. *Briones*, 24 I.&N. Dec. at 362-63. Further, the law did not distinguish between those who entered unlawfully one time or numerous times, unless the alien reentered after having previously been deported. "[S]uch an alien would have been inadmissible even in 1994." *Id*. at 363. The enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009, 3009-546 (eff. Apr. 1, 1997) (IIRIRA), "fundamentally altered" this legal landscape. *Briones*, 24 I.&N. Dec. at 363. Among other things, IIRIRA made aliens who enter without inspection inadmissible.

Despite this change, the BIA concluded that an alien who is inadmissible under § 1182(a)(6)(A)(i) because he entered without inspection can still obtain an adjustment of status under § 1255(i). *Briones*, 24 I.&N. Dec. at 365. It reasoned that "[§ 1255(i)] adjustment remains available to aliens inadmissible under [§ 1182(a)(6)(A)(i)] only because a contrary interpretation would render the language of [§ 1255(i)] so internally contradictory as to effectively vitiate the statute, an absurd result that Congress is presumed not to have intended." *Id. Cf.*

*Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 167 (2004) ("[W]e must, if possible, construe a statute to give every word some operative effect."). The BIA specifically rejected any reliance on § 1182(a)'s so-called "savings clause." *Briones*, 24 I.&N. Dec. at 364-65.

Subsection 1182(a) describes the "[c]lasses of aliens ineligible for visas or admission." It begins with the statement that "*[e]xcept as otherwise provided in this chapter*, aliens who are inadmissible under the following paragraphs are ineligible to receive visas and ineligible to be admitted to the United States." 8 U.S.C. § 1182(a) (emphasis added). "This language acts as a 'savings clause,' allowing admission of otherwise inadmissible aliens where the statute so provides." *Mora v. Mukasey*, 550 F.3d 231, 234 (2d Cir. 2008). Paragraph (a)(9)(C) relates to "[a]liens unlawfully present after previous immigration violations" and provides in pertinent part as follows:

> Any alien who--
>
> (I) has been unlawfully present in the United States for an aggregate period of more than 1 year, or
>
> (II) has been ordered removed under section 1225(b)(1) of this title, section 1229a of this title, or any other provision of law,
>
> and who enters or attempts to reenter the United States without being admitted is inadmissible.

8 U.S.C. § 1182(a)(9)(C)(i).

The alien in *Briones*, like petitioner here, argued that § 1255(i) fell within the scope of § 1182(a)'s savings clause and effectively waived inadmissibility

-19-

under § 1182(a)(9)(C)(i) for purposes of relief under § 1255(i).  The BIA rejected

the alien's reliance on the savings clause for several reasons.  First, "the phrase

'except as provided otherwise in this Act' most naturally denotes an explicit

proviso or stipulation that supplies a condition, exception, or limitation on other

statutory language," but the statute contained no such proviso.  *Briones*, 24 I.& N.

Dec. at 365.

Second, it was not necessary to infer an exception to inadmissibility under

§ 1182(a)(9)(C) for aliens seeking to adjust their status under § 1255(i) to avoid

an absurd result.  The BIA rejected the argument that the language in

§ 1255(i)(1)(A) making adjustment of status available to aliens who "entered the

United States without inspection" would be "rendered superfluous" if such relief

were not available to aliens who were inadmissible under § 1182(a)(9)(C)(i)(I).

*Briones*, 24 I.& N. Dec. at 365.  This argument, the BIA said, was based on the

mistaken premise that the class of aliens described in § 1255(i)(1)(A) as having

entered the United States without inspection is coextensive with the class of

aliens described in § 1182(a)(9)(C)(i)(I).  To the contrary, the latter class is

actually a subset of the former class, comprised of recidivists.  Aliens in the latter

class not only entered the country without inspection, but then, after staying for at

least a year, left the country and *thereafter* reentered or attempted to reenter

illegally.  *Briones*, 24 I.& N. Dec. at 365-66.  The BIA noted that § 1182(a)(9)(C)

is entitled, "Aliens unlawfully present after previous immigration violations," and

held that "[t]his language clearly reflects that Congress was concerned with recidivists, not first-time immigration violators." *Briones*, 24 I.& N. Dec. at 366.

The BIA also noted that although no alien who is currently inadmissible solely because he entered the United States without inspection would have been inadmissible before IIRIRA, the same is not true of many aliens who are currently inadmissible under § 1182(a)(9)(C). *Briones*, 24 I.& N. Dec. at 366. Accordingly, if the BIA were to hold that § 1182(a)'s savings clause created an exception to inadmissibility under § 1182(a)(9)(C) for those seeking relief under § 1255(i), it "would in effect be making [§ 1255(i)] adjustment available to a whole new class of aliens who had *never* been eligible for it." *Briones*, 24 I.& N. Dec. at 366-67. The BIA "decline[d] to take such an unwarranted leap." *Id.* at 367.

Nor did the BIA see any reason to distinguish between an alien inadmissible under § 1182(a)(9)(C)(i)(I) (reentering the country illegally after a year of unlawful presence) and an alien inadmissible under § 1182(a)(9)(C)(i)(II) (reentering the country illegally after a prior removal) when considering eligibility for relief under § 1255(i).

> Congress drafted [§ 1182(a)(9)(C)] to define a *unitary* ground of inadmissibility that may be predicated on various types of conduct. The provision draws no substantive distinction between aliens who have reentered the United States illegally after removal and those who, like respondent, have done so after committing a prior immigration violation for which they managed to avoid removal.

*Briones*, 24 I.& N. Dec. at 367. "Where Congress has not seen fit to distinguish between these two groups for purposes of inadmissibility," the BIA saw "no justification for distinguishing between them as candidates for [§ 1255(i)] adjustment." *Id.*

Additionally, the BIA "deem[ed] it of crucial importance" that whenever Congress has chosen to extend eligibility for adjustment of status to inadmissible aliens, i.e., "where Congress has 'otherwise provide[d]' within the meaning of the savings clause," Congress has done so "unambiguously, either by negating certain grounds of inadmissibility outright or by providing for discretionary waivers of inadmissibility, or both." *Id.* (citing 8 U.S.C. §§ 1159(c), 1160(a)(1)(C), (c)(2)(A), 1255(h)(2)(A), 1255a(b)(1)(C)(i), (d)(2)(A) (2000)). Even where "Congress has enacted special remedial legislation extending adjustment of status to aliens who are unlawfully present in the United States, it has seen the necessity of *expressly negating* the applicability of [§ 1182(a)(9)(C)]." *Id.*

As examples, the BIA pointed to the Nicaraguan Adjustment and Central American Relief Act, Pub. L. No. 105-100, § 202, 111 Stat. 2193, 2193 (1997) (NACARA), and the Haitian Refugee Immigration Fairness Act of 1998, tit. IX, Pub. L. No. 105-277, § 902, 112 Stat. 2681-538, 2681-538 (HRIFA), in which Congress made adjustment of status available to certain Nicaraguan, Cuban, and Haitian immigrants who were in the country illegally. Under both Acts, the BIA explained, Congress expressly nullified a number of grounds of inadmissibility

-22-

that would otherwise have prevented most of the aliens from being eligible for an adjustment of status, but Congress did not initially include inadmissibility under § 1182(a)(9)(C) among the waivable grounds. *Briones*, 24 I.& N. Dec. at 367. When it became clear that inadmissibility under § 1182(a)(9)(C) might present an obstacle to adjustment of status, Congress amended both Acts as part of the LIFE Act Amendments of 2000, Pub. L. No. 106-554, 114 Stat. 2763A-324, to give the Attorney General discretion to waive § 1182(a)(9)(C) grounds of inadmissibility for aliens seeking to adjust their status under those statutes. *Briones*, 24 I.&N. Dec. at 368.

The BIA found several aspects of these amendments to NACARA and HRIFA significant. First, they showed that Congress understood that, without an explicit waiver, an alien's inadmissibility under § 1182(a)(9)(C) would prevent him from being able to adjust his status even under a statute that permitted aliens unlawfully present in the United States to adjust their status. *Id.* Second, the amendments showed that "when Congress wants to make adjustment of status available to aliens despite their inadmissibility under [§ 1182(a)(9)(C)], it knows how to do so." *Id.* And third, although Congress saw fit to add provisions to NACARA and HRIFA in the LIFE Act Amendments giving the Attorney General discretion to waive § 1182(a)(9)(C) grounds of inadmissibility, it did not add a similar provision to § 1255(i) even though it did make other amendments to § 1255(i) in the LIFE Act Amendments. *Id.* The BIA presumed that Congress

-23-

acted intentionally and purposefully when it chose to include particular language in one section of the LIFE Act Amendments but not in another. *Id.* (citing *INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 (1987)).

Finally, because § 1182(a)(9)(C) concerns only recidivist immigration violators, the BIA found little merit in the argument that making relief under § 1255(i) unavailable to aliens who are inadmissible under § 1182(a)(9)(C) would be incompatible with the remedial purposes of § 1255(i). *Briones*, 24 I.&N. Dec. at 370. "This emphasis on the remedial purpose of [§ 1255(i)] unduly discounts both the clear preclusive language of the admissibility requirement of [§ 1255(i)(2)(A)]–language which Congress has notably declined to mitigate despite having done so in analogous contexts–and the countervailing purpose underlying [§ 1182(a)(9)(C)], which is to compound the adverse consequences of immigration violations by making it more difficult for individuals who have left the United States after committing such violations to be lawfully readmitted thereafter." *Id.* (internal quotation marks omitted).

The BIA noted that one of the main purposes of IIRIRA was to overcome the problem of recidivism by, among other things, increasing the civil and criminal penalties for illegal reentry. It concluded that the myriad provisions in IIRIRA aimed at recidivist immigration violators "reflects a clear congressional judgment that such repeat offenses are a matter of special concern and that

recidivist immigration violators are more culpable, and less deserving of leniency, than first-time offenders." *Id.* at 371.

The BIA held that an alien who is inadmissible under § 1182(a)(9)(C)(i)(I) is statutorily ineligible to adjust his status under § 1255(i) because he cannot demonstrate that he is "admissible to the United States for permanent residence" as required by § 1255(i)(2)(A). *Briones*, 24 I.&N. Dec. at 371. "[S]uch an outcome," the BIA concluded, "seems perfectly consonant with the language, structure and purpose of the [INA], taken as a whole." *Id.*

Although we adopted a different line of reasoning in *Padilla-Caldera*, we cannot say that the BIA's interpretation of the statute in *Briones* is unreasonable.[8] We must therefore give it *Chevron* deference. We note that every other court to consider the matter has reached the same conclusion. *See Renteria-Ledesma v. Holder*, 615 F.3d 903, 908 (8th Cir. 2010); *Ramirez v. Holder*, 609 F.3d 331, 335-37 (4th Cir. 2010); *Mora*, 550 F.3d at 239; *Ramirez-Canales v. Mukasey*, 517 F.3d 904, 910 (6th Cir. 2008).

### *Briones*' Effect on Law of the Case and Our Mandate

The BIA's decision in *Briones* provides a reasonable interpretation of the interplay between § 1182(a)(9)(C)(i)(I) and § 1255(i) and is therefore the

---

[8]     We reject petitioner's contention that our decision in *Padilla-Caldera* found the rationale the BIA employed in *Briones* to be inherently unreasonable. We do not read our decision as having foreclosed the BIA's reasoning in *Briones*.

authoritative interpretation. *See Brand X*, 545 U.S. at 983. Accordingly, it controls over our contrary decision in *Padilla-Caldera*, and the BIA correctly recognized that it provided a compelling reason for the BIA to depart from the law of the case and our mandate on remand. *See, e.g., Dobbs*, 600 F.3d at 1281; *Moore*, 83 F.3d at 1234.

Petitioner objects that permitting the BIA to deviate from the law of the case and our mandate would "mean[] that the BIA can almost never be held to a circuit court precedent with which it disagrees." Pet'r Opening Br. at 13. To the extent petitioner suggests that the BIA may routinely ignore this court's instructions on remand, he is in error. Generally, the BIA must follow this court's directions. If this court holds that there can be but one interpretation of a statutory provision consistent with the INA, then the BIA must follow our interpretation. *See Brand X*, 545 U.S. at 982-83. And if this court holds that the BIA's interpretation of an ambiguous provision of the INA is unreasonable, the BIA cannot ignore our holding and continue to follow its unreasonable interpretation. *See Marcado-Zazueta v. Holder*, 580 F.3d 1102, 1112-13 (9th Cir. 2009) (holding that "[w]hile agencies retain discretion to fill ambiguous statutory gaps, it does not follow that an agency may repeatedly put forward an interpretation that we already have examined under *Chevron* and found unreasonable at its second step"). But if a provision of the INA is ambiguous and the BIA's interpretation of it is reasonable, then the BIA is not bound to follow a

-26-

contrary interpretation by this court. *See Brand X*, 545 U.S. at 982-83; *In re R-A-*, 24 I.&N. Dec. 629, 631 & n.4 (Att'y Gen. 2008) (recognizing that although BIA historically followed circuit court precedent within particular circuit even when it disagreed with it, *Brand X* makes clear that BIA is not bound by circuit court authority regarding interpretation of ambiguous statutory provisions).

## Conclusion

The BIA's determination in *Briones*, 24 I.&N. Dec. at 371, that an alien who is inadmissible under 8 U.S.C. § 1182(a)(9)(C)(i)(I) is ineligible for an adjustment of status under 8 U.S.C. § 1255(i), is a reasonable interpretation of ambiguous statutory provisions to which we owe *Chevron* deference. As such, the BIA's interpretation of the statute, not this court's interpretation in *Padilla-Caldera*, 453 F.3d at 1241-44, is the authoritative interpretation. The BIA issued its decision in *Briones* while proceedings in this case were pending on remand. In light of this intervening contrary controlling authority, the BIA was justified in departing from the law of the case and our mandate on remand to follow the law established in *Briones*. And in accordance with *Briones*, the BIA properly concluded that petitioner could not adjust his status to that of a lawful permanent resident under § 1255(i) because he was inadmissible under § 1182(a)(9)(C)(i)(I) and reversed the IJ's grant of relief.

AFFIRMED.