FILED
United States Court of Appeals
Tenth Circuit

September 30, 2011

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

CARLOS NAVARRO-PEREZ,

Petitioner,

v.

ERIC H. HOLDER, JR.,
United States Attorney General,

Respondent.

No. 10-9576
(Petition for Review)

## ORDER AND JUDGMENT[*]

Before **HARTZ**, Circuit Judge, **HOLLOWAY** and **PORFILIO**, Senior Circuit
Judges.

An immigration judge (IJ) denied Carlos Navarro-Perez's requests for

cancellation of removal and adjustment of status.  The Board of Immigration

---

[*]      After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is
therefore ordered submitted without oral argument.  This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel.  It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Appeals (BIA) dismissed his appeal, and he petitions for review. For the reasons set forth below, we dismiss in part and deny in part the petition for review.[1]

**BACKGROUND**

Mr. Navarro, a native and citizen of Mexico, first entered the United States with his father in 1990. At that time, he was seven years old. In 1997, 1998, or 1999, he was caught at the border and returned to Mexico, but he illegally reentered the United States the next day. During the summer of 2002 ("probably . . . May or June. . . . [o]r July"), Mr. Navarro visited Mexico for two or three weeks. Admin. R. at 120. When he returned to the United States, he was stopped at the border and officials took him to jail, fingerprinted him, and "threw [him] back." *Id.* at 96. When asked at the hearing how old he was "at th[at] time," he responded, "I was -- I had to have been, maybe, 19." *Id.* He returned to the United States by sneaking through a river.

On December 1, 2003, Mr. Navarro pleaded guilty to and was convicted of third-degree assault in Colorado. The conviction stemmed from a 2002 fight he had with an ex-girlfriend who went to the hospital after Mr. Navarro "punched her." *Id.* at 103. Two years later, he pleaded guilty to another Colorado third-degree assault charge. The second charge was the result of a bar fight where Mr. Navarro threw beer bottles and "hit some girl . . . in the neck." *Id.*

---

[1] We follow the petitioner's lead in referring to himself as Mr. Navarro rather than Mr. Navarro-Perez.

at 106. The administrative record is less detailed concerning the 2005 third-degree assault charge, but it is uncontested that Mr. Navarro was indeed convicted of this charge, *see* Pet'r Br. at 22.[2]

In early 2006, Mr. Navarro married a United States citizen with whom he has three children. She filed an I-130 Petition for Alien Relative on his behalf in July of that year; at the same time, Mr. Navarro filed a Form I-485, Application to Register Permanent Residence or Adjust Status.[3] The Petition for Alien Relative was approved on April 20, 2007. "That approval officially established [Mr. Navarro and his wife's] marital relationship for immigration purposes, and it was one prerequisite that had to be satisfied before [Mr. Navarro] could apply for . . . adjustment of status." *United States v. Atandi*, 376 F.3d 1186, 1187 (10th Cir. 2004).

On April 3, 2007, the Department of Homeland Security (DHS) served Mr. Navarro with a Notice to Appear in removal proceedings, alleging he had entered the United States in 1997 without being admitted or paroled after

---

[2]     The statute under which Mr. Navarro was convicted in 2003 and 2005 states, in relevant part, that the crime of assault in the third degree occurs when a person "knowingly or recklessly causes bodily injury to another person." Colo. Rev. Stat. § 18-3-204 (2002, 2005). *See also id.* § 18-1-501(6) (2002, 2005) (defining "knowingly"); *id.* § 18-1-501(8) (2002, 2005) (defining "recklessly"); *id.* § 18-1-901(c) (2002, 2005) (defining "bodily injury").

[3]     Thereafter, he filed Supplement A to Form I-485, checking a box indicating he was "in unlawful immigration status because [he] entered the United States without inspection or . . . remained in the United States past the expiration of [his] lawful admission." Admin. R. at 449.

inspection by an immigration officer, and charging him as subject to removal under 8 U.S.C. §§ 1182(a)(6)(A)(i) and (a)(7)(A)(i)(I).  Mr. Navarro, through counsel, conceded removability as charged and indicated he was seeking cancellation of removal under 8 U.S.C. § 1229b(b)(1), and adjustment of status under 8 U.S.C. § 1255(i), based on his marriage to a United States citizen.

In October 2009, after a number of hearings at which Mr. Navarro was represented by counsel and testified, an IJ issued an oral decision denying the relief sought.  Mr. Navarro appealed.

The BIA dismissed the appeal.  The BIA agreed with the IJ's conclusion that Mr. Navarro was ineligible for cancellation of removal because his 2003 third-degree assault conviction constituted a crime involving moral turpitude (CIMT).  *See* 8 U.S.C. § 1229b(b)(1)(C) (requiring, among other things, that to be eligible for cancellation of removal an alien must not have been convicted of a crime under § 1182(a)(2), which includes a CIMT).  In reaching this determination, the BIA relied on Mr. Navarro's 2003 record of conviction, explaining that it

> clearly shows that the respondent pled guilty to acting knowingly *and* recklessly to cause bodily injury. . . .  This level of intent and injury demonstrates that he has been convicted of a crime involving moral turpitude.  *See Matter of Solon*, 24 I&N Dec. 239 (BIA 2007) (discussing interplay between intent and degree of harm caused).

Admin. R. at 4 (emphasis added); *see also* Admin. R. at 172 (criminal complaint charging Mr. Navarro with "unlawfully, knowingly *and* recklessly caus[ing]

-4-

injury to" his ex-girlfriend (emphasis added)).  The BIA rejected Mr. Navarro's

argument that Colo. Rev. Stat. § 18-3-204 "is not divisible," Admin. R. at 4,

explaining that Mr. Navarro "misapprehends the holding in *Marquez-Garcia v.*

*Holder*, 584 F.3d 1288 (10th Cir. 2009), which actually held that [§ 18-3-204]

covers conduct that is morally turpitudinous, as well as conduct that is not.

584 F.3d at 1289."  Admin. R. at 4.  Further, noted the BIA, in *Marquez-Garcia*

the court "held that the burden was on the respondent to prove his eligibility for

the requested relief, and because the record was inconclusive [in

*Marquez-Garcia*,] the respondent failed to meet his burden of proof."  Admin. R.

at 4.  Turning to Mr. Navarro's 2005 third-degree assault conviction, the BIA

decided the record was "inconclusive, meaning that under *Marquez-Garcia*,

[Mr. Navarro] ha[d] not met his burden of proof to establish eligibility for relief."

Admin. R. at 4.  *See* 8 U.S.C. § 1229a(c)(4)(A) (alien bears burden of proof to

establish eligibility for relief from removal); 8 C.F.R. § 1240.8(d) (same).

The BIA also agreed with the IJ's denial of Mr. Navarro's application for

adjustment of status under 8 U.S.C. § 1255(i)[4] because he had failed to carry his

burden of demonstrating he was not inadmissible under § 1182(a)(9)(C)(i)(I).

That subsection states, "[a]ny alien who . . . has been unlawfully present in the

---

[4]     "Section 1255(i) permits aliens who entered the United States without
inspection to apply for adjustment of status to that of lawful permanent resident
provided they meet certain requirements."  *Herrera-Castillo v. Holder*, 573 F.3d
1004, 1005 n.2 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 3505 (2010).

United States for an aggregate period of more than 1 year . . . and who enters or attempts to reenter the United States without being admitted is inadmissible." *Id.* § 1182(a)(9)(C)(i)(I).[5] In particular, the BIA highlighted Mr. Navarro's testimony that he first entered the United States in 1990, he turned eighteen on July 22, 2001, and he "admitted to returning to Mexico briefly in the summer of 2002." Admin. R. at 4. As such, the BIA concurred with the IJ's determination that Mr. Navarro "failed to show that he ha[d] not been unlawfully present in the United States for 1 year since he turned 18 years old," and concluded he was therefore ineligible for adjustment of status. *Id.* at 4. This petition for review followed.

## ANALYSIS

The issues raised by Mr. Navarro relate to his applications for cancellation of removal under 8 U.S.C. § 1229b and adjustment of status under 8 U.S.C. § 1255. While we are statutorily precluded from reviewing "any judgment regarding the granting of relief under" those sections, 8 U.S.C. § 1252(a)(2)(B)(i), we nonetheless retain jurisdiction to review "constitutional claims or questions of

---

[5]     We note that Mr. Navarro asserts, without any citation to the record, that the "petition that allows for the adjustment of status under 8 U.S.C. § 1255(i) was filed in 1993." Pet'r Br. at 7. What we found in the record, however, is an undated Petition for Alien Relative, *see* Admin. R. at 310-11, and several Notices of Action indicating a Petition for Alien Relative was received by DHS in July 2006, *see id.* at 291, 428, 453. *See* 8 U.S.C. § 1255(i)(1)(B)(i) (indicating that petition for classification under 8 U.S.C. § 1154 (procedure for granting immigrant status) had to have been filed "on or before April 30, 2001").

law raised upon a petition for review" regarding the BIA's denial of an alien's applications, *id.* § 1252(a)(2)(D). "We have construed § 1252(a)(2)(D)'s 'constitutional claims or questions of law' language to reach . . . constitutional and statutory-construction questions, not discretionary or factual questions." *Lorenzo v. Mukasey*, 508 F.3d 1278, 1282 (10th Cir. 2007) (internal quotation marks omitted); *see also Diallo v. Gonzales*, 447 F.3d 1274, 1281, 1282 (10th Cir. 2006) (construing "questions of law" in § 1252(a)(2)(D) to include "a narrow category of issues regarding statutory construction" and rejecting a broader interpretation that would grant jurisdiction to review "all claims having a legal dimension").

"Because a single member of the BIA decided the appeal and issued a brief opinion, we review the BIA's decision as the final agency determination and limit our review to issues specifically addressed therein." *Jimenez-Guzman v. Holder*, 642 F.3d 1294, 1297 (10th Cir. 2011) (brackets omitted) (internal quotation marks omitted). We may, however, "consider the IJ's decision for a further explanation of the grounds for the agency's decision." *Id.* We review the BIA's "legal determinations de novo." *Herrera-Castillo*, 573 F.3d at 1007.

***Cancellation of removal***

In his petition for review, Mr. Navarro contends that "[a]lthough there was ambiguity in both the 2003 and 2005 convictions," Pet'r Br. at 23, the IJ and BIA erroneously failed to consider his testimony in determining the turpitude question,

as prescribed by *Matter of Silva-Trevino*, 24 I. & N. Dec. 687, 704 (BIA 2008) (requiring adjudicators to consider "additional evidence the adjudicator determines is necessary . . . to resolve accurately the moral turpitude question" "if the record of conviction does not resolve the inquiry").[6]  In support, he contends that his "testimony does not go into detail as to the injury suffered by the victims in either case" and that "[t]here is no actual evidence specifically of a serious bodily injury," which, he argues, "must be necessary for the Colorado Statute to be a CMT [sic]."  Pet'r Br. at 25.  *Cf. Brue v. Gonzales*, 464 F.3d 1227, 1232 (10th Cir. 2006) (observing that we are without jurisdiction to "reweigh evidence to determine if the crime was indeed particularly serious").  He sums up his argument in a conclusory fashion, asserting that the "facts do not remotely sound in a willful or intentional or even knowingly state of mind."  Pet'r Br. at 26.

In resolving the turpitude issue with respect to Mr. Navarro's 2003 third-degree assault conviction, the BIA relied on the record of conviction.  The

---

[6]  Relying on *Garcia-Marquez*, the government counters that Mr. Navarro's acknowledgment that his 2003 and 2005 convictions are ambiguous is determinative.  In other words, the government asserts that because "he admits that based on the record[s] of conviction he cannot establish by a preponderance of the evidence that he has not committed an offense constituting a crime involving moral turpitude . . . [he is] barr[ed] . . . from cancellation of removal."  Resp't Br. at 23.  *See Garcia-Marquez*, 584 F.3d at 1290 (holding that "[b]ecause it is unclear from [petitioner's] record of conviction whether he committed a CIMT, we conclude he has not proven eligibility for cancellation of removal").  Because of our disposition, as explained below, we need not resolve this issue.

BIA was therefore not required to consider Mr. Navarro's testimony. *See Silva-Trevino*, 24 I. & N. Dec. at 704. With respect to his 2005 third-degree assault conviction, the BIA determined that the record was inconclusive; and, having examined the record, it is clear Mr. Navarro's testimony was taken into account in making this determination.

To the extent Mr. Navarro asks this court to reconsider the facts in his case, including his hearing testimony, and conclude that either or both of his convictions were not crimes involving moral turpitude, we are without jurisdiction to do so. An alien does not raise a constitutional claim or question of law "within the meaning of § 1252(a)(2)(D) . . . by arguing that the evidence was incorrectly weighed, insufficiently considered, or supports a different outcome." *Alzainati v. Holder*, 568 F.3d 844, 850-51 (10th Cir. 2009) (internal quotation marks omitted).

Accordingly, we deny in part and dismiss in part Mr. Navarro's challenges to the denial of his application for cancellation of removal.

*Adjustment of Status*

With regard to his application for adjustment of status, Mr. Navarro asserts that what is critical is whether he demonstrated he was subject to 8 U.S.C. § 1182(a)(9)(B)(iii), which contains an exception to inadmissibility for unlawfully present aliens under eighteen years of age in calculating the alien's period of unlawful presence, *or* whether he was subject to 8 U.S.C. § 1182(a)(9)(C)(i)(I), as

the BIA and IJ concluded, and as the government maintains. Mr. Navarro attempts to shore-up his assertion with challenges to the IJ's (but not the BIA's) (1) factual findings, *see* Pet'r Br. at 15 (arguing that the "IJ determined against the weight of the evidence that [Mr. Navarro] had been present in the United States for more than one year prior to his departure"), and (2) interpretation of the hearing testimony, *see id.* at 18 ("The alien's own credible testimony is sufficient to establish the record and facts and therefore, sufficient to demonstrate his burden."). We are without jurisdiction to consider these challenges. *Alzainati*, 568 F.3d at 850-51; *Lorenzo*, 508 F.3d at 1282 (explaining that this court's construction of § 1252(a)(2)(D)'s "questions of law language" does not reach "discretionary or factual questions" (internal quotation marks omitted)).

Mr. Navarro also claims the BIA's "decision is deficient . . . and is arbitrary and capricious" because the BIA relied on the IJ's decision "and not the testimony in this case." Pet'r Br. at 19. But he provides no support or elaboration, whatsoever. *See Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) (observing that "perfunctory complaints" that "fail to frame and develop an issue" are insufficient "to invoke appellate review"). If he is asking this court to reconsider his hearing testimony and conclude that he met his burden of demonstrating he was not present in the United States for an aggregate period of more than one year *between* turning eighteen (on July 22, 2001,) and *leaving*

-10-

the United States in the summer of 2002, we are without jurisdiction to do so.

*Alzainati*, 568 F.3d at 850-51; *Lorenzo*, 508 F.3d at 1282.[7]

> Finally, Mr. Navarro contends that because the BIA and IJ erroneously
>
> failed to address in whole *Padilla-Caldera*[, 453 F.3d 1237 (10th Cir.
> 2005), *overruled by Padilla-Caldera v. Holder*, 637 F.3d 1140
> (10th Cir. 2011),] and *In re Briones*[, 24 I. & N. Dec. 355
> (BIA 2007),] it is unclear the stance this court will take in terms [of]
> whether the BIA has drawn a rational relationship between 8 U.S.C.
> § 1255(i) and 8 U.S.C. §1182(a)(9)(C).

Pet'r Br. at 20. He then invites "this court . . . not [to] defer to the BIA['s]"

construction of those statutes, asserting "*Briones* is itself arbitrary, capricious and

manifestly contrary to the law." Pet'r Br. at 20-21 (internal quotation marks

omitted).

Despite Mr. Navarro's assertions, our precedent dictates our "stance." Less

than two months after he filed a petition for judicial review, we concluded that

the BIA's holding in *Briones*, 24 I. & N. Dec. at 371, must be accorded *Chevron*[8]

deference. *Padilla-Caldera*, 637 F.3d at 1152. Stated differently, we concluded

that this court must accord deference to the BIA's conclusion "that an alien who

is inadmissible under § 1182(a)(9)(C)(i)(I) cannot qualify for an adjustment of

---

[7]    While we retain jurisdiction to review the legal question of whether the quantum of evidence submitted by an alien satisfies his burden of proof with respect to eligibility for discretionary relief, *Garcia-Marquez*, 584 F.3d at 1289 n.2, Mr. Navarro does not make that sort of argument.

[8]    *Chevron, U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

status under § 1255(i) absent a waiver of inadmissibility (which is not at issue here)." *Padilla-Caldera*, 637 F.3d at 1143 (citing *Briones*, 24 I. & N. Dec. at 371). In reaching this conclusion, we "note[d] that every other court to consider the matter ha[d] reached the same conclusion," *Padilla-Caldera*, 637 F.3d at 1152 (citing cases from the Fourth, Sixth, and Eighth Circuits), and we acknowledged that we had previously "adopted a different line of reasoning" in *Padilla-Caldera*, 453 F.3d at 1244. *Padilla-Caldera*, 637 F.3d at 1152.

Accordingly, we deny in part and dismiss in part Mr. Navarro's challenges to the denial of his application for adjustment of status.[9]

---

[9]  In his opening brief, Mr. Navarro asserts, on several occasions, that *Padilla-Caldera*, 453 F.3d 1237 (10th Cir. 2005), is still good law. This may have been true at the time he filed his opening brief in January 2011, but we issued *Padilla-Caldera v. Holder*, 637 F.3d 1140 (10th Cir. 2011), less than two months later and before Mr. Navarro's optional response brief was due (which he chose not to file). Further, although five months have now passed since we issued *Padilla-Caldera*, 637 F.3d 1140, we note that "neither party has filed a notice of supplemental authority under Fed. R. App. P. 28(j) to inform the panel of this change in law." *Dobbs v. Anthem Blue Cross & Blue Shield*, 475 F.3d 1176, 1179 (10th Cir. 2007). "Although notice is not required under Rule 28(j), good

(continued...)

## CONCLUSION

We DISMISS for lack of jurisdiction Mr. Navarro's challenges to the factual findings underlying his applications for cancellation of removal and adjustment of status.  We DENY the balance of the petition for review.

Entered for the Court

John C. Porfilio
Senior Circuit Judge

---

[9](...continued)
advocates nevertheless file such notice out of respect for this Court and a commitment to resolving disputes in an expeditious manner." *Id.*