# In re Raul RODARTE-Roman, Respondent

File A76 666 353 - San Diego

*Decided April 6, 2006*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)  To be rendered inadmissible for 10 years pursuant to section 212(a)(9)(B)(i)(II) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(9)(B)(i)(II) (2000), an alien must depart the United States after having been unlawfully present in the United States for 1 year or longer.

(2)  Pursuant to sections 301(b)(3) and 309(a) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-578, 309-625, no period of an alien's presence in the United States prior to April 1, 1997, may be considered "unlawful presence" for purposes of determining an alien's inadmissibility under section 212(a)(9)(B) of the Act.

FOR RESPONDENT:  Peter James Musser, Esquire, Vista, California

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Christopher J. Reeber, Assistant Chief Counsel

BEFORE:  Board Panel: OSUNA, Acting Vice Chairman;  PAULEY and FILPPU, Board Members.

PAULEY, Board Member:

The respondent appeals from an Immigration Judge's July 14, 2004, decision finding him inadmissible to the United States under section 212(a)(9)(B)(i)(II) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(9)(B)(i)(II) (2000), and pretermitting his application for adjustment of status under section 245(i) of the Act, 8 U.S.C. § 1255(i) (2000).  The Department of Homeland Security ("DHS"), formerly the Immigration and Naturalization Service ("INS"), opposes the appeal.[1]  The appeal will be

---

[1]  On March 1, 2003, the functions of the Immigration and Naturalization Service were transferred to the Department of Homeland Security pursuant to Title IV of the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, 2177 ("HSA").  *See Matter of D-J-*, 23 I&N Dec. 572, 573 n.1 (A.G. 2003). To avoid possible confusion, the former INS will be referred to in this decision as the DHS.

sustained and the record will be remanded to the Immigration Judge for further proceedings.

## I.  FACTUAL AND PROCEDURAL HISTORY

The respondent, a native and citizen of Mexico, entered the United States without inspection in 1993 and remained unlawfully until May 3, 1997, when he departed and returned to Mexico.  In early August 1997, he reentered the United States without being admitted or paroled by an immigration officer, and he has remained in the United States continuously thereafter.   In December 1997, he was apprehended by the DHS and placed in the present removal proceedings, in which he is charged with removability as an alien present in the United States without having been admitted or paroled. *See* section 212(a)(6)(A)(i) of the Act.

On March 24, 2001, after these removal proceedings had been initiated, the respondent's United States citizen wife filed an immediate relative visa petition on his behalf, which was approved by the DHS on October 17, 2001. On the basis of this approved visa petition, the respondent requested that the Immigration Judge entertain his application for adjustment of status under section 245(i) of the Act. The Immigration Judge pretermitted the application, however, concluding that the respondent's years of unlawful presence in the United States after his May 1997 departure rendered him inadmissible under section 212(a)(9)(B)(i)(II) of the Act and, by extension, ineligible for adjustment of status.

## II.  ISSUE

This appeal presents the question whether the respondent, who has been unlawfully present in the United States since his unauthorized entry in August 1997, and who is seeking adjustment of status less than 10 years after his last departure from the United States in May 1997, is inadmissible under section 212(a)(9)(B)(i)(II) of the Act.

## III.  RELEVANT STATUTORY PROVISION

Section 212(a)(9)(B)(i) of the Act provides, in pertinent part, as follows:

> In general
>
>> Any alien (other than an alien lawfully admitted for permanent residence) who—
>> (I) was unlawfully present in the United States for a period of more than 180 days

but less than 1 year, voluntarily departed the United States . . . prior to the commencement of proceedings under . . . section 240, and again seeks admission within 3 years of the date of such alien's departure or removal, or

(II) has been unlawfully present in the United States for one year or more, and who again seeks admission within 10 years of the date of such alien's departure or removal from the United States,

is inadmissible.

## IV. DISCUSSION

The respondent wants to adjust his status from that of an alien present in the United States without having been admitted or paroled to that of a lawful permanent resident under section 245(i) of the Act. Section 245(i)(1) of the Act provides, in pertinent part, that "an alien physically present in the United States . . . who . . . entered the United States without inspection" and who is the beneficiary of a visa petition filed on or before April 30, 2001, may apply to the Attorney General for adjustment of status upon payment of $1,000.[2] Upon receiving the alien's application and the required sum, the Attorney General is authorized to adjust the alien's status to that of a lawful permanent resident if, among other things, "the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence." Section 245(i)(2)(A) of the Act; *see also Matter of Torres-Garcia*, 23 I&N Dec. 866, 869 (BIA 2006).

The Immigration Judge determined that the respondent was not "admissible to the United States for permanent residence," within the meaning of section 245(i)(2) of the Act, because he had been unlawfully present in the United States for 1 year or more and was seeking admission, by means of adjustment of status, less than 10 years after he departed the United States in May 1997, which rendered him inadmissible under section 212(a)(9)(B)(i)(II). Furthermore, the Immigration Judge held that the respondent did not qualify for a waiver of inadmissibility based on family hardship under section 212(a)(9)(B)(v) of the Act. Accordingly, the Immigration Judge pretermitted the respondent's application for adjustment of status and entered an order of removal against him.

The sole issue raised on appeal is whether the Immigration Judge erred by finding the respondent inadmissible under section 212(a)(9)(B)(i)(II) of the

---

[2] Pursuant to the Homeland Security Act, the reference to the Attorney General in section 245(i) of the Act is now deemed to refer to the Secretary of Homeland Security as well. *See* HSA, § 1517, 116 Stat. at 2311 (codified at 6 U.S.C. § 557 (Supp. II 2002)).

Act.[3] Specifically, the respondent asserts that section 212(a)(9)(B)(i)(II) was not intended to apply to aliens who are seeking adjustment of status from within the United States after reentering unlawfully, but rather was intended to affect only those aliens who departed the United States after being unlawfully present for 1 year or longer and who are subsequently seeking "admission" at the border less than 10 years after departure. We agree with the respondent in part.

On the one hand, we disagree with the respondent's contention that the reference in section 212(a)(9)(B)(i)(II) to an alien who "seeks admission" applies only to one who is applying for admission at the border. In the Immigration and Nationality Act, the term "admission" generally refers to adjustment of status from within the United States, as well as lawful entry at the border. *See generally Matter of Shanu*, 23 I&N Dec. 754 (BIA 2005); *Matter of Rosas*, 22 I&N Dec. 616 (BIA 1999). The present case vividly illustrates the rationale for this rule. If the term "admission" did not include "lawful admission to permanent residence" by means of adjustment of status, then section 212(a)(9)(B)(i)(II) would preclude an alien from acquiring lawful permanent residence through admission as an immigrant at the border, but would permit the very same alien to evade this preclusion by simply entering the United States unlawfully and applying for adjustment. We do not believe that Congress intends the Immigration and Nationality Act to be interpreted in a manner that would give aliens an incentive to enter the United States illegally.

On the other hand, we also take issue with the Immigration Judge's determination that the requirements of section 212(a)(9)(B)(i)(II) can be satisfied whenever an alien has accrued 1 year or more of unlawful presence before seeking admission, even if that period of unlawful presence accrued *after* the alien's only departure from the United States. Such an interpretation may not be strictly forbidden by the language of section 212(a)(9)(B)(i)(II), viewed in isolation. However, it does not flow naturally from the statutory language, taken in context; nor is it in keeping with the legislative purpose of the provision. In any event, to the extent that the language of section 212(a)(9)(B)(i)(II) can be viewed as ambiguous, it is incumbent upon us to

---

[3] The respondent does not dispute that he is removable as charged, nor does he dispute that inadmissibility under section 212(a)(9)(B)(i)(II) would have the effect of making him ineligible for adjustment of status under section 245(i). Furthermore, although the respondent's Notice of Appeal from a Decision of an Immigration Judge (Form EOIR-26) contains an unsupported assertion that the Immigration Judge abused his discretion by denying a hardship waiver under section 212(a)(9)(B)(v), the respondent's appellate brief merely notes that he does not need such a waiver in light of the fact that he is not inadmissible under section 212(a)(9)(B)(i)(II).

resolve the ambiguity and adopt a reasonable construction of Congress's language. *National Cable & Telecommunications Assn. v. Brand X Internet Services*, 125 S. Ct. 2688, 2699 (2005); *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-44 (1994).

Section 212(a)(9) of the Act was enacted pursuant to section 301(b) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-575 (effective Apr. 7, 1996) ("IIRIRA"). It includes the following three subparagraphs: (A), which provides for the inadmissibility of any alien who has been removed from the United States or who has departed the United States while an order of removal was outstanding; (B), directly at issue in this case, which provides for the temporary inadmissibility of aliens who have been unlawfully present in the United States for certain continuous periods and who are seeking admission after having departed; and (C), which provides for the permanent inadmissibility of any alien who enters or attempts to reenter the United States without being admitted after a prior removal or after a prior aggregate period of unlawful presence of more than 1 year. *See Matter of Torres-Garcia*, *supra*, at 868 n.2.

The unifying theme of section 212(a)(9) is that all its subparagraphs seek to compound the adverse consequences of immigration violations by making it more difficult for individuals who have left the United States after committing such violations to be lawfully readmitted thereafter. In every subparagraph, Congress has tied the relevant period of inadmissibility (or, where inadmissibility is permanent, the period of waiver ineligibility) to the date when the alien departs the United States, voluntarily or otherwise. We deem it evident that Congress made departure (rather than commencement of unlawful presence) the event that triggers inadmissibility or ineligibility for relief, because it is departure which marks the culmination of the alien's prior immigration violation and which makes the alien a potential *recidivist*. It is recidivism, and not mere unlawful presence, that section 212(a)(9) is designed to prevent.

Because the focus of section 212(a)(9) is on the prevention of recidivist immigration violations, it is reasonable to conclude that Congress understood each of its subparagraphs to condition inadmissibility on the existence of immigration violations that preceded the alien's departure from the United States. This interpretation flows most naturally from the language of section 212(a)(9). Indeed, with respect to an alien who "seeks admission" at the border (i.e., an alien who has departed but not reentered), it is the only plausible interpretation of the statutory language. Accordingly, we conclude that an alien's departure from the United States triggers the 10-year inadmissibility period specified in section 212(a)(9)(B)(i)(II) only if that departure was preceded by a period of unlawful presence of at least 1 year.

Legislative history further reinforces our understanding that the "departure" which triggers inadmissibility under section 212(a)(9)(B)(i) must fall at the *end* of a qualifying period of unlawful presence. With respect to the language that would subsequently be codified at section 212(a)(9)(B), the Conference Committee Report issued at the time of the IIRIRA's enactment states that

> [t]his subsection . . . provides that an alien unlawfully present in the United States for a period of more than 180 days but less than 1 year who voluntarily departed the United States is barred from admission for 3 years. An alien unlawfully present for 1 year or more who voluntarily departs is barred from admission for 10 years.

H.R. Rep. No. 104-828, at 207-08 (1996) (Conf. Rep.). Thus, it is the departure of a person who *is* unlawfully present that triggers inadmissibility, and not the departure of a person who subsequently *becomes* unlawfully present. In other words, Congress understood the accrual of unlawful presence to be a condition precedent to inadmissibility arising from departure. It did not understand departure and accrual of unlawful presence to be independent criteria for inadmissibility that could arise irrespective of the sequence in which they occurred.

This same understanding of section 212(a)(9)(B) is reflected in the official policy pronouncements of the DHS, which have not, to our knowledge, been repudiated. According to a policy memorandum issued on March 31, 1997, section 212(a)(9)(B)(i)(II) renders inadmissible "those aliens 'unlawfully present' in the United States for one year or more, who depart or are removed and then seek admission." Memorandum from Paul W. Virtue, Acting Executive Associate Commissioner, Office of Programs, to INS officials (Mar. 31, 1997), *reprinted in* 74 Interpreter Releases, No. 13, Apr. 7, 1997, app. I at 578, 580. A similar understanding is reflected in a policy memorandum issued on May 1, 1997. Memorandum from Louis D. Crocetti, Jr., Associate Commissioner, Office of Examinations, to INS officials (May 1, 1997), *reprinted in* 74 Interpreter Releases, No. 18, May 12, 1997, app. II at 791-94.

Because the focus of section 212(a)(9) of the Act is on the prevention of recidivist immigration violations, we believe the Immigration Judge's interpretation of section 212(a)(9)(B)(i)(II) is overly broad. Under that interpretation, for example, nothing would prevent inadmissibility from being triggered by an alien's departure from the United States at the end of a period of *lawful* presence (under the terms of a tourist visa, for example), so long as the alien subsequently enters the United States unlawfully or overstays a nonimmigrant visa, even once. We can conceive of no reason why Congress would wish to apply the strictures of section 212(a)(9)(B)(i)(II) to aliens who departed the United States after a prior period of lawful presence. Such aliens

would already be inadmissible (but not ineligible for section 245(i) adjustment) under section 212(a)(6)(A)(i) of the Act.

In applying our conclusion to the facts of the respondent's case, we recognize that he was unlawfully present in the United States for more than 3 years prior to the date when he departed for Mexico in May 1997. A continuous 3-year period of unlawful presence preceding departure would ordinarily be sufficient to place an alien within the scope of section 212(a)(9)(B)(i)(II) of the Act. But it does not make the respondent inadmissible because Congress expressly declined to make the provisions of section 301(b) of the IIRIRA retroactive. Section 301(b)(3) provides that "[i]n applying section 212(a)(9)(B) of the Immigration and Nationality Act, . . . no period before the title III–A effective date shall be included in a period of unlawful presence in the United States." IIRIRA § 301(b)(3), 110 Stat. at 3009-578. Section 309(a) specifies that title III–A became effective on April 1, 1997, less than 2 months prior to the date when the respondent made his only known departure from the United States. IIRIRA § 309(a), 110 Stat. at 3009-625. Accordingly, because the respondent is deemed to have been "unlawfully present" for less than 2 months prior to his departure in May 1997, he is not inadmissible to the United States under section 212(a)(9)(B)(i)(II).[4]

## V.  CONCLUSION

In conclusion, the respondent is not inadmissible under section 212(a)(9)(B)(i)(II) of the Act because his departure from the United States in May 1997 was not preceded by a period of "unlawful presence" of 1 year or more. Because the respondent is not inadmissible under section 212(a)(9)(B)(i)(II), he is neither in need of a section 212(a)(9)(B)(v) waiver nor statutorily ineligible for adjustment of status under section 245(i) on that basis. We will therefore vacate the Immigration Judge's decision pretermitting the respondent's adjustment application and remand the record for further proceedings.

**ORDER:**  The appeal is sustained.

**FURTHER ORDER:**  The decision of the Immigration Judge is vacated in part, and the record is remanded for further proceedings consistent with the foregoing opinion and for the entry of a new decision.

---

[4] We note that the Immigration Judge also concluded below that the respondent was not inadmissible under section 212(a)(9)(C)(i)(I) of the Act on the basis of his unlawful reentry in August of 1997. The DHS has not challenged that determination in connection with the present appeal, and, therefore, we have no occasion to review it here.