**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARIA MATILDE CARRILLO DE
PALACIOS,
                          *Petitioner,*

v.

ERIC H. HOLDER JR., Attorney
General,

                          *Respondent.*

No. 09-72059

Agency No.
A026-630-010

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
January 11, 2011—Seattle, Washington

Filed June 21, 2011

Before: Susan P. Graber and Milan D. Smith, Jr., Circuit
Judges, and Roger T. Benitez,* District Judge.

Opinion by Judge Milan D. Smith, Jr.

---

*The Honorable Roger T. Benitez, United States District Judge for the
Southern District of California, sitting by designation.

**COUNSEL**

Mari Matsumoto, Robert Pauw (argued), and Erin Cipolla, Gibbs Houston Pauw, Seattle, Washington, for the petitioner.

Tony West, John S. Hogan, Channah M. Farber, and Jessica E. Sherman (argued), Civil Division, United States Department of Justice, Washington, D.C., for the respondent.

## OPINION

M. SMITH, Circuit Judge:

Petitioner Maria Matilde Carrillo de Palacios (Carrillo de Palacios) petitions for review of a decision of the Board of Immigration Appeals (BIA). The BIA determined that Carrillo de Palacios is ineligible for adjustment of status under section 245(i) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1255(i), because she is inadmissible under INA section 212(a)(9)(C)(i), 8 U.S.C. § 1182(a)(9)(C)(i), and is not eligible for the exception to inadmissibility in INA section 212(a)(9)(C)(ii), 8 U.S.C. § 1182(a)(9)(C)(ii).

We deny the petition, as the BIA correctly concluded that Carrillo de Palacios returned to the United States after having been "unlawfully present in the United States for an aggregate period of more than 1 year," which renders her inadmissible under 8 U.S.C. § 1182(a)(9)(C)(i)(I). We reject her argument that the § 1182(a)(9)(C)(i)(I) one-year period of unlawful presence must occur after the April 1, 1997 effective date of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, div. C, § 309(a), 110 Stat. 3009-546, 3009-625, *reprinted in* 8 U.S.C. § 1101 note, at 35 (2006) (Effective Date of 1996 Amendments). The BIA also correctly concluded that she does not satisfy the requirements of 8 U.S.C. § 1182(a)(9)(C)(ii)'s exception to inadmissibility. We hold that in order to be eligible under 8 U.S.C. § 1182(a)(9)(C)(ii), an alien must remain outside the United States for more than ten years before returning to the United States.

## FACTUAL AND PROCEDURAL BACKGROUND

Carrillo de Palacios is a native and citizen of Mexico. The Government instituted removal proceedings against her in 2005, alleging that she had entered the United States without being admitted or paroled, and therefore was subject to

removal under 8 U.S.C. § 1182(a)(6)(A)(i). She conceded removability and sought to adjust her status to that of a lawful permanent resident under 8 U.S.C. § 1255(i). The Government opposed the adjustment-of-status application on the ground that she had been deported in December 1984 and subsequently reentered the country without permission in 1992 and 1997.

The immigration judge granted the adjustment-of-status application, concluding that cases such as *Acosta v. Gonzales*, 439 F.3d 550 (9th Cir. 2006), provided the judge authority to "cure the prior deportation and subsequent illegal return." The BIA then reversed in an unpublished decision, holding in relevant part that Carrillo de Palacios was inadmissible under 8 U.S.C. § 1182(a)(9)(C)(i), that she did not qualify for the exception to inadmissibility under 8 U.S.C. § 1182(a)(9)(C)(ii), and that, as a result, she was not eligible for adjustment of status under 8 U.S.C. § 1255(i). The BIA accordingly ordered her removed.

## JURISDICTION AND STANDARD OF REVIEW

Because the BIA's decision was issued in 2009, our review is governed by the REAL ID Act of 2005, Pub. L. No. 109-13, div. B, 119 Stat. 231. When addressing adjustment-of-status issues contained in final orders of removal, we have jurisdiction to review questions of law under 8 U.S.C. § 1252(a)(2)(D). *Morales-Izquierdo v. Dep't of Homeland Sec.*, 600 F.3d 1076, 1084 (9th Cir. 2010). We review those questions of law de novo. *Id.* at 1086 n.9.

## DISCUSSION

### I.   Statutory Framework

**[1]** To obtain adjustment of status under INA section 245(i), an alien must be "admissible to the United States for permanent residence." 8 U.S.C. § 1255(i)(2)(A). Aliens who

are inadmissible under INA section 212(a)(9)(C), 8 U.S.C. § 1182(a)(9)(C), are ineligible for adjustment of status. That provision, entitled "Aliens unlawfully present after previous immigration violations," states:

(i) In general

Any alien who—

(I) has been unlawfully present in the United States for an aggregate period of more than 1 year, or

(II) has been ordered removed under section 1225(b)(1) of this title, section 1229a of this title, or any other provision of law,

and who enters or attempts to reenter the United States without being admitted is inadmissible.

(ii) Exception

Clause (i) shall not apply to an alien seeking admission more than 10 years after the date of the alien's last departure from the United States if, prior to the alien's reembarkation at a place outside the United States or attempt to be readmitted from a foreign contiguous territory, the Secretary of Homeland Security [Secretary] has consented to the alien's reapplying for admission.

8 U.S.C. § 1182(a)(9)(C)(i)-(ii).[1]

---

[1]Clause (iii), which allows the Secretary to waive clause (i) for certain Violence Against Women Act self-petitioners, is not at issue in this case. *See* 8 U.S.C. § 1182(a)(9)(C)(iii); *see also* Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. No. 109-162, 119 Stat. 2960.

Although our construction of these provisions might be viewed as occasionally inconsistent, the law of our circuit is now settled: according *Chevron* deference to the BIA's interpretation of the relevant statutes, we have held that aliens who are inadmissible under 8 U.S.C. § 1182(a)(9)(C)(i)(I)-(II) are ineligible for adjustment of status under 8 U.S.C. § 1255(i). *See Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984).[2] Aliens who are otherwise inadmissible under 8 U.S.C. § 1182(a)(9)(C)(i) are deemed admissible only if they qualify for the exceptions to inadmissibility stated in § 1182(a)(9)(C)(ii)-(iii). The exception at issue in this case, § 1182(a)(9)(C)(ii), "requir[es] that [the alien] obtain permission to apply for readmission from outside the United States after ten years have lapsed from the date of his last departure." *Gonzales*, 508 F.3d at 1242.

## II.   Inadmissibility under 8 U.S.C. § 1182(a)(9)(C)

The BIA concluded that Carrillo de Palacios is inadmissible under both 8 U.S.C. § 1182(a)(9)(C)(i)(I) and § 1182(a)(9)(C)(i)(II), and thus is ineligible for adjustment of status under § 1255(i). We agree with the BIA's conclusion regarding § 1182(a)(9)(C)(i)(I). We need not address the arguments regarding 8 U.S.C. § 1182(a)(9)(C)(i)(II), and we express no opinion regarding the BIA's analysis of that provision.

---

[2]In *Garfias-Rodriguez v. Holder*, ___ F.3d ___, No. 09-72603, 2011 WL 1346960, at *5-6 (9th Cir. Apr. 11, 2011), we abrogated our earlier decision in *Acosta*, 439 F.3d 550, in light of the BIA's holding in *In re Briones*, 24 I. & N. Dec. 355 (B.I.A. 2007), that aliens may not adjust their status under 8 U.S.C. § 1255(i) if they are inadmissible under § 1182(a)(9)(C)(i)(I). Similarly, in *Gonzales v. Department of Homeland Security*, 508 F.3d 1227, 1241-42 (9th Cir. 2007), we abrogated *Perez-Gonzalez v. Ashcroft*, 379 F.3d 783 (9th Cir. 2004), in light of the BIA's decision in *In re Torres-Garcia*, 23 I. & N. Dec. 866 (B.I.A. 2006), which held that aliens may not adjust their status under § 1255(i) if they are inadmissible under § 1182(a)(9)(C)(i)(II). We have further held that the holdings of *Briones* and *Torres-Garcia*, and our decisions deferring to those holdings, may be applied retroactively. *Garfias-Rodriguez*, 2011 WL 1346960, at *6-7; *Morales-Izquierdo*, 600 F.3d at 1088-90.

**[2]** The statutory text is straightforward: an alien is inadmissible if she "has been unlawfully present in the United States for an aggregate period of more than 1 year" and subsequently "enters . . . the United States without being admitted." 8 U.S.C. § 1182(a)(9)(C)(i)(I). The parties agree that Carrillo de Palacios was unlawfully present for more than one year between 1981 and 1983, and that she returned without being admitted in September 1997. These facts establish that she satisfies both elements of § 1182(a)(9)(C)(i)(I): she "enter[ed] . . . the United States without being admitted" in 1997 after having "been unlawfully present . . . for an aggregate period of more than 1 year" between 1981 and 1983. *Id.*; *see also Garfias-Rodriguez*, 2011 WL 1346960, at *1, *6 ("[Garfias] unlawfully entered the United States in 1996 and departed the country, once in 1999 and once in 2001 . . . . Garfias is inadmissible under 8 U.S.C. § 1182(a)(9)(C)(i)(I) . . . ."). The BIA therefore correctly concluded that she is inadmissible under § 1182(a)(9)(C)(i)(I).

In response, Carrillo de Palacios argues that § 1182(a)(9)(C)(i)(I) is impermissibly retroactive as applied to her case. She explains that her "accrual of unlawful presence prior to her most recent entry into the United States in September[ ] 1997, does not cause her to be inadmissible because her unlawful presence accrued *before* April 1, 1997, the [effective] date of . . . [§ 1182(a)(9)](C)(i)(I)."

The Supreme Court addressed a similar argument about IIRIRA's retroactivity in *Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). The Court began by describing the retroactivity analysis set forth in *Landgraf v. USI Film Products*, 511 U.S. 244, 278 (1994), and later cases:

> We first look to whether Congress has expressly prescribed the statute's proper reach, and in the absence of language as helpful as that we try to draw a comparably firm conclusion about the temporal reach specifically intended by applying our normal rules of

construction. If that effort fails, we ask whether applying the statute to the person objecting would have a retroactive consequence in the disfavored sense of affecting substantive rights, liabilities, or duties on the basis of conduct arising before its enactment. If the answer is yes, we then apply the presumption against retroactivity by construing the statute as inapplicable to the event or act in question owing to the absence of a clear indication from Congress that it intended such a result.

*Fernandez-Vargas*, 548 U.S. at 37-38 (alterations, citations, and internal quotation marks omitted).

The Court applied this two-part analysis to reject Fernandez-Vargas's retroactivity challenge to IIRIRA's reinstatement-of-removal provision, 8 U.S.C. § 1231(a)(5). The statute provided that if " 'an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and . . . the alien shall be removed under the prior order at any time after the reentry.' " *Fernandez-Vargas*, 548 U.S. at 34-35 (quoting 8 U.S.C. § 1231(a)(5)). Fernandez-Vargas argued that the statute did not apply to him because he reentered the country in 1982, long before the provision went into effect, and his petition accordingly should have been decided under the more favorable pre-IIRIRA legal regime. *Id.* at 33-35, 38.

The Court rejected Fernandez-Vargas's arguments in light of *Landgraf*. Under the first step of *Landgraf*, it noted that Congress had not explicitly directed that § 1231(a)(5) was to be applied either prospectively or retroactively, and held that the standard tools of statutory interpretation failed to resolve the question. *Id.* at 38, 41. It then applied the second step of *Landgraf*, and emphasized that retroactivity generally involves the imposition of "a new disability consequent to a

completed act." *Id.* at 45. Under this approach, the reinstatement statute was not impermissibly retroactive:

> [I]t is the conduct of remaining in the country after entry that is the predicate action; the statute applies to stop an indefinitely continuing violation that the alien himself could end at any time by voluntarily leaving the country. It is therefore the alien's choice to continue his illegal presence, after illegal reentry and after the effective date of the new law, that subjects him to the new and less generous legal regime, not a past act that he is helpless to undo up to the moment the Government finds him out.

*Id.* at 44. Thus, the statute was not retroactive. *Id.* at 45.

The Court explained that its conclusion was consistent with the policy rationales underlying retroactivity, *id.* at 45-46, which had been described in an earlier case as "fair notice, reasonable reliance, and settled expectations," *INS v. St. Cyr*, 533 U.S. 289, 321 (2001) (internal quotation marks omitted). These policies were not implicated with respect to Fernandez-Vargas, because he "could not only have chosen to end his continuing violation and his exposure to the less favorable law, he even had an ample warning that the new law could be applied to him and ample opportunity to avoid that very possibility . . . ." *Fernandez-Vargas*, 548 U.S. at 45.

**[3]** The conclusions in *Fernandez-Vargas* apply with equal force to Carrillo de Palacios's retroactivity argument. The first step of the analysis—"whether Congress has expressly prescribed the statute's proper reach," or whether the "normal rules of construction" reveal a "firm conclusion about the temporal reach specifically intended" by Congress, *id.* at 37 (internal quotation marks omitted)—is inconclusive with respect to § 1182(a)(9)(C)(i)(I). Carrillo de Palacios emphasizes IIRIRA's effective date provision, which states that the statute is effective on April 1, 1997. *See* IIRIRA § 309(a)

(providing that certain amendments, including the addition of § 1182(a)(9)(C), "shall take effect on the first day of the first month beginning more than 180 days after the date of the enactment of this Act"). On one hand, her argument carries some persuasive force: "A statement that a statute will become effective on a certain date does not even arguably suggest that it has any application to conduct that occurred at an earlier date." *Landgraf*, 511 U.S. at 257. But on the other hand, her argument is not conclusive: "the instruction that the provisions are to 'take effect upon enactment' . . . mean[s] that courts should evaluate each provision of the Act in light of ordinary judicial principles concerning the application of new rules to pending cases and preenactment conduct." *Id.* at 280. Thus, the statute's effective date provision, taken in isolation, does not conclusively determine whether it applies only to future conduct, or to prior conduct as well.

**[4]** In an attempt to invoke "ordinary judicial principles" of statutory construction, *id.*, the Government notes that IIRIRA explicitly states that the period of unlawful presence under an analogous neighboring subsection, § 1182(a)(9)(B),[3] begins to accrue upon the effective date of IIRIRA. That effective date provision states: "In applying section 212(a)(9)(B) of the

---

[3]That subsection provides:

Any alien . . . who—

(I) was unlawfully present in the United States for a period of more than 180 days but less than 1 year, voluntarily departed the United States . . . prior to the commencement of proceedings under section 1225(b)(1) of this title or section 1229a of this title, and again seeks admission within 3 years of the date of such alien's departure or removal, or

(II) has been unlawfully present in the United States for one year or more, and who again seeks admission within 10 years of the date of such alien's departure or removal from the United States,

is inadmissible.

8 U.S.C. § 1182(a)(9)(B)(i) (footnote omitted).

Immigration and Nationality Act, [8 U.S.C. § 1182(a)(9)(B),] . . . no period before the [IIRIRA] title III—A effective date [i.e., April 1, 1997] shall be included in a period of unlawful presence in the United States." IIRIRA § 301(b)(3). In contrast, the subsection at issue here, 8 U.S.C. § 1182(a)(9)(C), contains no such forward-looking effective date provision. Instead, § 1182(a)(9)(C) is governed by IIRIRA's general effective date provision, which states that many of IIRIRA's provisions, including § 1182(a)(9)(C), "shall take effect on" April 1, 1997. IIRIRA § 309(a). Unlike the specific effective date provision governing the accrual of unlawful presence under § 1182(a)(9)(B), this generic effective date provision makes no reference to the accrual of unlawful presence under § 1182(a)(9)(C)(i)(I). *See id.*

**[5]** According to the Government, these contrasting effective date provisions reveal Congress's intent that § 1182(a)(9)(C)(i)(I) applies retroactively to unlawful presence that accrued prior to April 1, 1997. *See Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 837 (1988) ("[W]e are hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law."). We agree with the Government that § 1182(a)(9)(B) is relevant to our analysis, but we disagree that it is conclusive. Section 1182(a)(9)(B)'s forward-looking effective date provision persuades us that Congress did not "specifically intend[ ]" for § 1182(a)(9)(C)'s aggregate-unlawful-presence provision to operate prospectively. *Fernandez-Vargas*, 548 U.S. at 37. Given that § 1182(a)(9)(B) is explicitly limited to prospective applications, Congress obviously knew how to reach the same result with respect to § 1182(a)(9)(C), and apparently declined to do so.

While the contrast between § 1182(a)(9)(B) and § 1182(a)(9)(C) persuades us that Congress did not clearly intend § 1182(a)(9)(C)(i)(I) to have an exclusively prospective effect, we do not view this as a sufficiently clear state-

ment that Congress intended § 1182(a)(9)(C)(i)(I) to operate retroactively. In the first step of the *Landgraf* analysis, we must "determine whether Congress has *expressly* prescribed the statute's proper reach." *Landgraf*, 511 U.S. at 280 (emphasis added). At this stage of the analysis, a mere "inference of intent to apply [a] . . . provision retroactively" is insufficient, because "we require a clear statement for that." *Fernandez-Vargas*, 548 U.S. at 41. No such "clear statement" of retroactivity exists with respect to § 1182(a)(9)(C)(i)(I), so we must proceed to the second step of *Landgraf. See, e.g.*, *Valencia-Alvarez v. Gonzales*, 469 F.3d 1319, 1325 (9th Cir. 2006) ("[W]e must proceed to the second step of the *Landgraf* approach unless Congress's intent that the statute be given retroactive application is clear.").

Under the second step of the analysis, "we ask whether applying the statute to the person objecting would have a retroactive consequence in the disfavored sense of 'affecting substantive rights, liabilities, or duties on the basis of conduct arising before its enactment.' " *Fernandez-Vargas*, 548 U.S. at 37 (alterations omitted) (quoting *Landgraf*, 511 U.S. at 278). It is important to define the "conduct" that the statute addresses. "The conclusion that a particular rule operates 'retroactively' . . . concern[s] the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a *relevant past event*." *Landgraf*, 511 U.S. at 270 (emphasis added). A statute is retroactive if it creates a "new disability consequent to a *completed act*." *Fernandez-Vargas*, 548 U.S. at 45 (emphasis added). "[A] statute 'is not made retroactive merely because it draws upon antecedent facts for its operation.' " *Landgraf*, 511 U.S. at 269 n.24 (quoting *Cox v. Hart*, 260 U.S. 427, 435 (1922)). A law that applies to conduct occurring "after the effective date of the new law" may "look[ ] back to a past act" without being impermissibly retroactive. *Fernandez-Vargas*, 548 U.S. at 44; *see also McAndrews v. Fleet Bank of Mass., N.A.*, 989 F.2d 13, 16 (1st Cir. 1993) ("[A] statute may modify the legal effect of a present status or alter a preexisting relationship

without running up against the retroactivity hurdle. . . . So long as a neoteric law determines status solely for the purpose of future matters, its application is deemed prospective.").

**[6]** Under this line of analysis, Carrillo de Palacios's retroactivity argument fails. Section 1182(a)(9)(C)(i)(I) regulates the conduct of reentering the United States without being admitted, not the conduct of being unlawfully present for more than one year. The statute uses the present tense "enters or attempts to reenter" when referring to the alien's reentry, but uses the participle "has been unlawfully present" when referring to the alien's unlawful presence. 8 U.S.C. § 1182(a)(9)(C)(i)(I); *see also* 1 U.S.C. § 1 ("words used in the present tense include the future as well as the present"); *United States v. Cook*, 497 F.2d 753, 767 (9th Cir. 1972) (Ely, J., dissenting) (noting that past or perfect participle refers to conduct that is "complete" rather than "in progress"). As a result, it is the alien's present or future reentry that triggers § 1182(a)(9)(C)(i)(I), not her past unlawful presence. *See Cox*, 260 U.S. at 435 ("The language in terms applies to one who at the time of the enactment occupied a particular status, viz. the status of a person who *has done* the things enumerated. A statute is not made retroactive merely because it draws upon antecedent facts for its operation.").

**[7]** Here, the legal "disability" (inadmissibility) arises from the alien's *post*-IIRIRA act of unlawfully entering the country, not the alien's *pre*-IIRIRA accrual of unlawful presence. *Fernandez-Vargas*, 548 U.S. at 45. The alien's prior unlawful presence is merely an "antecedent fact[ ]" that limits the scope of § 1182(a)(9)(C)(i)(I)'s post-IIRIRA application. *Landgraf*, 511 U.S. at 269 n.24 (internal quotation marks omitted). In other words, § 1182(a)(9)(C)(i)(I) applies on account of "the alien's choice to [reenter the country] after the effective date of the new law," not on account of "a past act," such as prior unlawful presence, "that he is helpless to undo up to the moment the Government finds him out." *Fernandez-Vargas*, 548 U.S. at 44. Because the relevant conduct was Carrillo de

Palacios's reentry "without being admitted" in September 1997 (*after* IIRIRA became effective), not her "unlawful[ ] presen[ce] . . . for an aggregate period of more than 1 year" in the early 1980s, § 1182(a)(9)(C)(i)(I) does not have a retroactive effect. 8 U.S.C. § 1182(a)(9)(C)(i)(I); *see also United States v. Arzate-Nunez*, 18 F.3d 730, 734 (9th Cir. 1994) (rejecting retroactivity challenge to criminal reentry statute and stating that, "[f]or purposes of analyzing repeat offender statutes and statutes increasing penalties for future crimes based on past crimes, the relevant 'offense' is the current crime, not the predicate crime"); *accord United States v. Kaluna*, 192 F.3d 1188, 1199 (9th Cir. 1999) (en banc) ("The Supreme Court and this court uniformly have held that recidivist statutes do not violate the Ex Post Facto Clause if they are on the books at the time the present offense was committed." (alteration and internal quotation marks omitted)).[4]

## III. Exception to Inadmissibility under 8 U.S.C. § 1182(a)(9)(C)(ii)

Because Palacios is inadmissible under 8 U.S.C. § 1182(a)(9)(C)(i)(I), she may only seek adjustment of status under § 1255(i) if she qualifies under the exception to inad-

---

[4]Having independently analyzed the relevant statutes and case law, we reject Carrillo de Palacios's argument that we should defer to agency interpretations of § 1182(a)(9)(C)(i)(I). "Because a statute that is ambiguous with respect to retroactive application is construed under our precedent to be unambiguously prospective, there is, for *Chevron* purposes, no ambiguity in such a statute for an agency to resolve." *St. Cyr*, 533 U.S. at 320 n.45 (citation omitted).

Under the less-deferential *Skidmore* analysis, we find Carrillo de Palacios's administrative authorities to be unpersuasive. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). Carrillo de Palacios relies entirely on agency dicta and conclusory, *ipse dixit* assertions. We decline to defer to these statements under *Skidmore*, as they lack the "thoroughness evident in [their] consideration, the validity of [their] reasoning," or any of the other typical "factors which give [them] power to persuade." *Skidmore*, 323 U.S. at 140.

missibility set forth in § 1182(a)(9)(C)(ii). *Garfias-Rodriguez*, 2011 WL 1346960, at \*6; *see also Morales-Izquierdo*, 600 F.3d at 1079 (discussing § 1182(a)(9)(C)(ii) with respect to § 1182(a)(9)(C)(i)(II)); *Gonzales*, 508 F.3d at 1231 (same).

**[8]** We have previously explained the mechanics of § 1182(a)(9)(C)(ii): "while residing outside the United States," the alien must "appl[y] for and receive[ ] advance permission from the Secretary of Homeland Security . . . to reapply for admission." *Morales-Izquierdo*, 600 F.3d at 1079. However, the alien "is not eligible for such advance permission until ten years have elapsed since his [or her] last departure from the United States. This is commonly known as the 'ten-year bar' to readmission." *Id.* (citation omitted); *see also Gonzales*, 508 F.3d at 1231 ("An alien inadmissible under [§ 1182(a)(9)(C)(i)], however, may seek admission into the United States if: (1) he has been absent from the United States more than ten years, and (2) he has received the consent of the Secretary of Homeland Security to the application for readmission.").

Carrillo de Palacios argues that these precedents are inapposite to her case. She notes that the prior cases involved petitioners who requested § 1182(a)(9)(C)(ii) relief *within* ten years of leaving the United States. *E.g.*, *Morales-Izquierdo*, 600 F.3d at 1079; *Torres-Garcia*, 23 I. & N. Dec. at 873. In her case, by contrast, she "last departed the United States in 1992," and she filed her application for readmission in 2007, "*more than 10 years after her last departure from the United States.*" (Emphasis in original.)

**[9]** Even if we agreed with Carrillo de Palacios that the existing cases constitute dicta with respect to her particular circumstances, we may not lightly brush aside the reasoning and analysis contained in an unbroken chain of case law. We, the BIA, and our sister circuits have all stated that § 1182(a)(9)(C)(ii) requires that the alien be "absent from the United States more than ten years" before applying to the Sec-

retary. *Gonzales*, 508 F.3d at 1231.**⁵** Phrased differently, the alien must "exit the United States and wait ten years before applying." *Perez-Gonzalez v. Gonzales*, 403 F.3d 1116, 1117 (9th Cir. 2005) (Gould, J., dissenting from order denying motion to reconsider) (internal quotation marks omitted), *cited with approval by Torres-Garcia*, 23 I. & N. Dec. at 875.

[10] Carrillo de Palacios's argument places undue weight on one portion of the relevant clause, while ignoring the surrounding statutory language. She emphasizes the phrase "an alien seeking admission more than 10 years after the date of the alien's last departure from the United States." 8 U.S.C. § 1182(a)(9)(C)(ii). She last departed in 1992 and filed her application in 2007, so, according to her reasoning, she satisfies the requirements of § 1182(a)(9)(C)(ii). But that clause also requires that the alien must obtain the Secretary's consent "prior to the alien's reembarkation at a place outside the United States or attempt to be readmitted from a foreign contiguous territory." *Id.* Although the statute is subject to different interpretations, we conclude that the two sentences work in tandem: ten years must elapse between the time the alien "depart[s]" the United States *and* the time the alien "reembark[s]" or otherwise returns to the United States. If ten years must elapse between departure and return, then it necessarily follows that those ten years must be spent outside the United States.

---

**⁵***See also Delgado v. Mukasey*, 516 F.3d 65, 73 (2d Cir. 2008) (stating that the alien may only "seek permission to reapply for admission from outside of the United States after ten years have passed since his most recent departure from the United States"); *Mortera-Cruz v. Gonzales*, 409 F.3d 246, 250 n.4 (5th Cir. 2005) (noting that the alien must have "been outside the United States more than 10 years since his or her last departure"); *Fernandez-Vargas v. Ashcroft*, 394 F.3d 881, 885 (10th Cir. 2005) (describing requirement as "an unwaivable ten-year period outside of the United States"), *aff'd*, 548 U.S. 30 (2006); *Torres-Garcia*, 23 I. & N. Dec. at 875 (noting that the exception applies " 'only after the alien has been outside the United States for ten years' " (quoting *Berrum-Garcia v. Comfort*, 390 F.3d 1158, 1167 (10th Cir. 2004)).

Any lingering doubts about § 1182(a)(9)(C)(ii) can be resolved by examining the legislative scheme as a whole. *See Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 60 (2004) ("A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme . . . ." (internal quotation marks omitted)). The BIA has observed that the underlying purpose of § 1182(a)(9)(C) "was to single out recidivist immigration violators and make it more difficult for them to be admitted to the United States after having departed." *Briones*, 24 I. & N. Dec. at 358. We have concurred with that view. *Garfias-Rodriguez*, 2011 WL 1346960, at *5. The BIA has added that § 1182(a)(9) generally "seek[s] to compound the adverse consequences of immigration violations." *In re Rodarte-Roman*, 23 I. & N. Dec. 905, 909 (B.I.A. 2006). By requiring repeat immigration offenders to pay the penalty of waiting ten years outside the United States before receiving the privilege of lawful reentry, § 1182(a)(9)(C)(ii) promotes Congress's underlying policy goals of making admission more difficult for immigration recidivists.

**[11]** In light of this legislative policy, we continue to defer to the BIA's reasonable decision in *Torres-Garcia*, upon which the BIA expressly relied in rejecting Carrillo de Palacios's arguments below. *See Gonzales*, 508 F.3d at 1241-42 (deferring to *Torres-Garcia*). In *Torres-Garcia*, the BIA wrote:

> [W]e could not . . . allow an alien to circumvent the statutory 10-year limitation on [§ 1182](a)(9)(C)(ii) waivers by simply reentering unlawfully before requesting the waiver. After all, it is the alien's unlawful reentry without admission that makes [§ 1182](a)(9)(C)(i) applicable in the first place. . . . [A]n alien may not obtain a waiver of the [§ 1182](a)(9)(C)(i) ground of inadmissibility, retroactively or prospectively, without regard to the 10-year limitation set forth at [§ 1182](a)(9)(C)(ii).

23 I. & N. Dec. at 876. This reasoning applies directly to Carrillo de Palacios's circumstances. Although ten years elapsed since she last departed the United States, she attempted to "circumvent the statutory 10-year limitation . . . by simply reentering unlawfully" after spending only five years abroad. *Id.* She did not satisfy the statutory requirement that she spend ten years abroad before returning.

**[12]** Our prior discussions of § 1182(a)(9)(C)(ii) are therefore correct: the alien must be "absent from the United States more than ten years" before applying to the Secretary under § 1182(a)(9)(C)(ii). *Gonzales*, 508 F.3d at 1231. This, Carrillo de Palacios did not do. She departed in 1992 and returned in 1997, long before the ten-year period had lapsed. Like the BIA, we conclude that she was required to spend ten years outside the United States before returning. Having failed to do so, she does not satisfy the § 1182(a)(9)(C)(ii) exception to inadmissibility.[6]

## CONCLUSION

Carrillo de Palacios is inadmissible under 8 U.S.C. § 1182(a)(9)(C)(i)(I), and does not qualify for the § 1182(a)(9)(C)(ii) exception to inadmissibility. The BIA correctly determined that Carrillo de Palacios is not eligible for adjustment of status under § 1255(i).

**PETITION DENIED.**

---

[6]Because we conclude that Carrillo de Palacios failed to satisfy the statutory requirement that she wait outside the country for ten years, we refrain from deciding whether an alien who has waited outside the country for ten years may, under pre-existing agency practice, obtain *nunc pro tunc* permission to reapply after having returned to the United States.